# SOCIÉTÉ FONCIÈRE ET AGRICOLE DES ÉTATS UNIS *v.* MILLIKEN.

## ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF TEXAS.

No. 274.   Submitted April 16, 1890. — Decided, May 5, 1890.

Section 1373, Rev. Stats. Texas, authorizes the granting of new trials only where the judgment was rendered on service of process by publication.

Whether, in the absence of a statute, a judgment under which property has been levied upon and sold, and which has stood unchallenged for nearly two years, can be set aside otherwise than through proceedings in equity, *quære.*

A foreign corporation doing business in the State of Texas may be brought into court by service of process upon its agent there.

An affidavit, preliminary to the issue of an attachment in Texas upon a foreign corporation, which recites that the defendant " is not a resident corporation, or is a foreign corporation, or is acting as such," is a sufficient affidavit under Rev. Stats. Texas, Art. 152.   *Hopkins* v. *Nichols,* 22 Texas, 206, distinguished.

A delay of two years in commencing proceedings to set aside a judgment for usury is laches, and is fatal.

THE case is stated in the opinion.

*Mr. John T. Harcourt* for plaintiff in error.

*Mr. A. S. Lathrop* for defendant in error.

MR. JUSTICE BREWER delivered the opinion of the court.

On June 8, 1883, two judgments were rendered in the Circuit Court of the United States for the Northern District of Texas, in favor of Sam. H.-Milliken and against the Société Foncière et Agricole des États Unis.

On August 7, 1883, September 4, 1883, and April 1, 1884, a large number of lots and a body of lands were sold in satisfaction of an execution issued on these judgments, the bulk of the property being sold in 1883.   Thereafter, and on June 6, 1885, an application was made by the defendant, the Société Foncière

et Agricole des États Unis and Edmond Moreau to set aside said judgments and the sales made thereunder. To this application demurrers, general and special, were filed by Milliken, and sustained; and the application was dismissed. From the order or judgment of dismissal this proceeding in error has been prosecuted; and the single inquiry is, whether the court erred in denying the application. It was made under article 1373, Revised Statutes of Texas, cited by counsel: "In cases in which judgment has been rendered on service of process by publication, where the defendant has not appeared in person or by an attorney of his own selection, a new trial may be granted by the court upon the application of the defendant, for good cause shown, supported by affidavit, filed within two years after the rendition of such judgment;" but obviously that article does not refer to a case of this kind. It applies only to cases in which judgment has been rendered upon service of process by publication; but here there was no publication, no service of process attempted in that way. This is the only statutory provision referred to by counsel; and as that is not applicable, we must assume that there is no special statutory provision applicable to a case of this kind.

In the absence of a statute, can a judgment under which property has been levied upon and sold, and which has stood unchallenged for nearly two years, be set aside otherwise than through proceedings in equity? Certainly the ordinary remedy is in equity; and that is one of the grounds of demurrer presented by defendant. But waiving this question, is any sufficient reason shown for setting aside the judgments?

It appears that the plaintiff in error is a foreign corporation, organized under the laws of the Republic of France, and with its principal place of business in Paris; and organized with a special reference to business in the State of Texas, as shown by this statement from its charter: "This society has for its object all real estate, agricultural, and commercial operations of every nature whatsoever regarding the purchase, the acquisition in the way of grants or otherwise, and the improvement as owners or otherwise of lands in the State of Texas, America; the execution of public or private improve-

ments, and improvements of every kind on the lands worked by the society; the sale or transfer of all products, lands, and other real or personal property belonging to the society. The society may also consolidate with other companies and establishments, of same or different nature, situated in France or in America, acquire all rights and obligations of these companies, or take an interest therein." It had an agent in Texas, Henry P. du Bellet, who seems to have had and exercised all the powers of a general agent. As such agent he borrowed money from Milliken; and on July 9, July 21, and December 27, 1882, respectively, executed notes on behalf and in the name of the society for the sums borrowed, and gave deeds of trust to secure the payment thereof. These notes not being paid on the 9th of January, 1883, the first suit was brought; and service of process made upon du Bellet, as agent. On the 16th day of May, 1883, and after the commencement of the first suit, he borrowed more money from Milliken, and gave a new note in the name of the society, upon which the second suit was brought; and, as heretofore stated, on June 8, 1883, judgments were rendered in both suits. At the commencement of the first suit, a writ of attachment was sued out and levied upon the lands above referred to.

The right of du Bellet to borrow money in the name of the society, and to execute the trust deeds in its behalf, is not questioned: The claim is that he had no authority to receive service of process on behalf of the company, and that usurious interest was included in the judgments; also that, at the time of the commencement of the suits, the society had gone into liquidation in France, and that Moreau, the other petitioner, was the duly appointed liquidator.

That du Bellet was an agent, with varied general powers, — in fact *the* agent of the society in Texas, — is clear. His authority to borrow money, execute notes and trust deeds in the name and for the benefit of the society, is conceded. So far as appears, he accepted service of process in each suit, without question; and after service of process in the first case, dealt with the plaintiff, and gave him the new note out of which the second suit arose. Not only that; he is the party by whom the present application is evidently controlled, for

he verifies the application, and in it swears that he is the agent of the society.

Article 1223, Revised Statutes of Texas, 1879, provides: "In suits against any incorporated company or joint-stock association, the citation may be served on the president, secretary or treasurer of such company or association, or upon the local agent, representing such company or association in the county in which suit is brought, or by leaving a copy of the same at the principal office of the company during office hours." The language is, "any incorporated company," — language broad enough to include foreign as well as domestic corporations; and that it was intended to include foreign corporations is evident from prior legislation, for which this is a substitute. Chapter 34, Laws 1874, provided as follows: "That hereafter any public or private corporation, including railroad companies, created by or under the laws of this State, or any other State or country, may be sued in any court in this State having jurisdiction of the subject-matter, and in any county where the cause of action or any part thereof accrued, or in any county where such corporation has an agency, or representative, or in the county in which the principal office of such corporation is situated. That service of process on any of such corporations may be had by delivering a copy of such process, with the certified copy of plaintiff's petition, if any, to the president, secretary, treasurer, principal officers or the agent." Article 1223 was evidently substituted for this act, which is cited in the margin of the Revised Statutes, opposite the article. The act of 1874 expressly named corporations created under the laws of other States or countries, as well as those created under the laws of Texas. Article 1223, reducing the number of words, expresses the the same meaning by the words "any incorporated company." It matters not under what law the company is organized, or where its domicil is, service of process may be made upon the local agent representing it within the county in which the suit is brought. *Angerhoefer* v. *Bradstreet Co.*, 22 Fed. Rep. 305. In what county suit may be brought is determined by other sections, which need not be cited here, as

the right to sue in the federal court is not questioned. So, the court having jurisdiction of the cause of action, service might be made upon the local agent representing the society. Du Bellet was unquestionably such agent, and service upon him was sufficient to bring the society into court.

Again, in the first suit an attachment was issued and levied on the lands. Article 152 of the Revised Statutes states twelve separate grounds therefor. The second is : "That the defendant is not a resident of the State or is a foreign corporation, or is acting as such." The affidavit in this case, which by such article is required as preliminary to the issue of attachment, follows the very language of the statute, and alleges that the defendant " is not a resident corporation, or is a foreign corporation, or is acting as such." The disjunctive form of this averment is claimed to render it wholly invalid, and *Hopkins* v. *Nichols*, 22 Texas, 206, is cited as authority. That case held " that an attachment will be quashed, if issued upon an affidavit alleging in the disjunctive the one or the other of two distinct causes for the attachment." But that decision has no application. There are no distinct causes for an attachment stated in this affidavit. The single cause is non-residence, the cause stated in clause two, quoted above ; and while the language of the affidavit may be open to criticism, yet its meaning is clear. It describes only one cause for attachment, to wit, non-residence, and was sufficient to sustain an attachment. There can be but little doubt, therefore, that the court had jurisdiction of the lands by attachment, and of the defendant by service upon its agent.

With regard to the question of usury. The application alleges that the usury up to the date of the judgment amounted to $1179.08 ; it also alleges that the ten per cent attorney's fee, provided in the notes, was simply a cover for usurious interest, and the amount thereof, in fact, taken and received by Milliken. Assuming all this to be true, as it must be upon demurrer, the fact remains that the defendant waited two years, lacking two days, and until more than a year after all the sales had been made, before challenging the validity of the proceedings. No excuse for this delay is shown. Obviously, the defendant

was proceeding under the statute, which we have seen has no application; and independently of the statute, its delay unexcused is fatal. For, conceding the large amount of the judgment to be just, it attacks only an inconsiderable portion. Its agent being served with process, it is charged with knowledge, and some excuse for its long delay must be shown before the court would be justified in setting aside the judgment. The same observation may be made in reference to the matter of the sales; and, in addition, it must be noticed, that no distinct act of wrong is charged. The allegation is, " that the said Sam. H. Milliken, by his management, prevented fair competition, and discouraged and prevented other bidders, so that he could obtain the purchase of all of said property." No specific act of wrong-doing appears in this averment, and no fact is stated from which the court can deduce misconduct. With reference to the allegation, " that the society was in liquidation, and had been placed by the French court in charge of Edmond Moreau, as liquidator," it is enough to say, that that fact would not prevent Milliken from establishing his claim by suit in the courts of Texas against the corporation, and subjecting its property to the satisfaction thereof.

So, in conclusion, waiving any question of the form in which this application was presented, there was no error in denying it.

And the judgment of the Circuit Court is

*Affirmed.*