## BROWN et al. v. CANADIAN PAC. RY. CO.
### No. 2241A.

District Court, W. D. New York.
Nov. 30, 1938.

Morey & Schlenker, of Buffalo, N. Y., for plaintiffs.

Babcock, Hollister, Brown & Newbury, of Buffalo, N. Y., for defendant.

KNIGHT, District Judge.

This is a motion to quash the service of the summons and for a dismissal of the complaint. Service of the summons and complaint was made herein by delivery thereof in this District to William P. Wass, an employee of the defendant corporation and designated by it as "general agent." The Canadian Pacific Railway Company owns no line of railway in this District. It operates a line of railway between Toronto and Hamilton, Ontario. The Toronto, Hamilton & Buffalo Railway Company operates a line between Hamilton and Welland, Ontario, and the New York Central Railway, lessee of the Michigan Central, operates over a line between Welland, Ontario, and Buffalo, New York. These three railroad companies operate between Buffalo and Toronto under an agreement claimed to provide for the entire operation and management by each company over its own line. It also provides for the furnishing and maintenance of locomotives and cars by the separate companies and for a schedule of charges for maintenance, except as to café-parlor and dining room cars. The Canadian engines, freight and passenger cars are run through to Buffalo from Canada, and Pullman cars are operated between Toronto, Buffalo and New York. Five separate agreements with respect to preceding matters had been entered into commencing in 1935.

The Canadian Pacific occupies an office of considerable proportions in Buffalo, New York, in this District. It also has offices in Albany and New York City, and in the latter city is lessee of a large building designated as the Canadian Pacific Building. It occupies considerable space and lets space therein. It has fourteen employees in Buffalo. These include one, W. P. Wass, designated as "general agent" and one, Frank B. Ward, designated as "district freight agent." The offices contain both passenger and freight offices. Defendant's name appears on the sides of two entrances to its Buffalo offices. It sells passenger tickets from Buffalo to Toronto, Canada. These state upon their faces that they are "Issued by Canadian Pacific Railway" and on the reverse side appears "Can. Pac. Ry." Under date of June 15, 1938, defendant issued a time table entitled "Canadian Pacific Railway Lines," and therein appears in the designation of names

of "traffic representatives," Buffalo, New York, 22 Court Street, "W. P. Wass, General Agent, Pas. R. Dept." "F. B. Ward, District Freight Agent" and a similar designation as to such general agent appears elsewhere therein. Defendant advertised in a Buffalo newspaper the sale of trip tickets from Buffalo to various Canadian points. It maintains a bank account in Buffalo. It carries its office address in the telephone book.

Defendant has been sued at various times at places within this District. It has on occasions raised the present question of jurisdiction; on numerous occasions such question has not been raised. The State Court in the State of New York, in Hewitt v. Canadian Pacific R. Co., 124 Misc. 186, 207 N.Y.S. 797, affirmed 212 App.Div. 815, 207 N.Y.S. 851, held that the defendant "engages in substantial business" [page 798] in this state. It, however, appeared in the latter case that the officials in the state solicited traffic and handled freight claims.

Defendant appearing specially moves to quash the service of the summons and complaint on these grounds: (1) that the attempted service of such summons was in violation of the Due Process and Commerce clauses of the Federal Constitution U.S.C.A.Const. Amend. 5 and art. 1, § 8, cl. 3; (2) that this court does not have jurisdiction of this defendant; (3) that the attempted service was not made upon the proper person; and (4) that it does not appear that due diligence was used to effect service as provided by subdivisions 1 and 2 of Section 229 of the Civil Practice Act of the State of New York.

■ There was no violation of the Due Process clause, if defendant was "doing business" within the district when service was made. The place of origin of the cause of action makes no difference. In re Hohorst, 150 U.S. 653, 14 S.Ct. 221, 37 L. Ed. 1211; Barrow S. S. Co. v. Kane, 170 U.S. 100, 18 S.Ct. 526, 42 L.Ed. 964; Connecticut Mutual Life Ins. Co. v. Sprately, 172 U.S. 602, 19 S.Ct. 308, 43 L.Ed. 569; Frink Co. v. Erikson, 1 Cir., 20 F.2d 707; Roses Notes on U. S. Reports, Vol. 17, p. 96. Innumerable are the cases in which an alien corporation has been sued in a district outside the district where the cause of action arose. The Judicial Code, section 24, as amended, 28 U.S.C.A. § 41 (1) (c) provides that district courts shall have original jurisdiction in suits "between citizens of a State and foreign States, citizens or subjects. * * *" and Section 51 Judicial Code, 28 U.S.C.A. § 112(a) has no application in suits against aliens. In re Hohorst, supra.

Louisville & N. R. Co. v. Chatters, 279 U.S. 320, 49 S.Ct. 329, 73 L.Ed. 711; Old Wayne Mutual Life Ass'n v. McDonough, 204 U.S. 8, 27 S.Ct. 236, 51 L.Ed. 345; Simon v. Southern R. Co., 236 U.S. 115, 35 S.Ct. 255, 59 L.Ed. 492, cited by defendant, involved the question of state and not federal jurisdiction. The question there was whether a foreign corporation could be subjected to state jurisdiction by force of state statutes where the cause of action arose outside of the state. Jaroski v. Hamburgh-American Packet Co., 2 Cir., 182 F. 320.

■ There was no unreasonable burden upon commerce. If defendant was "doing business" in the district he was amenable to suit here, and this imposed no unreasonable burden. Davis v. Farmers' Co-op. Equity Co., 262 U.S. 312, 43 S.Ct. 556, 67 L. Ed. 996, and cases following, cited by defendant, involved question of whether a state statute violated the commerce clause and these are clearly distinguished from the instant case in Southern Railway Co. v. Cochran, 6 Cir., 56 F.2d 1019. Referring to the Davis Case the court said [page 1020]: "There the court had presented to it for decision a question as to whether a state statute, * * * violated the Federal Constitution by imposing an unreasonable burden upon interstate commerce. * * * That is not the question here presented. Jurisdiction is here asserted by a court of the United States under the mandate of a federal statute. * * * If the effect of a federal statute conferring jurisdiction upon a federal court is to place a burden upon interstate commerce, the power for that purpose exists, and the remedy is legislative and not judicial." citing Schendel v. McGee, 8 Cir., 300 F. 273. See also U. S. Merchants' & Shippers' Ins. Co. v. A/S den Norske A. Og A. Line, 2 Cir., 65 F.2d 392; Second Employers' Liability Cases, 223 U.S. 1, 32 S. Ct. 169, 56 L.Ed. 327.

Did this court obtain jurisdiction? Was the defendant doing business in the district? It is not necessary to quote specifically from any of the decisions bearing on this question, commencing with Green v. Chicago, Burlington & Quincy R. Co., 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916, and

including St. Louis Southwestern R. Co. v. Alexander. 227 U.S. 218, 33 S.Ct. 245, 57 L.Ed. 486, Ann.Cas.1915B, 77; International Harvester v. Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479; Philadelphia & Reading Ry. Co. v. McKibbin, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed. 710; Rosenberg Bros. & Co. v. Curtis Brown Co., 260 U.S. 516, 43 S.Ct. 170, 67 L.Ed. 372; Bank of America v. Whitney-Central Nat. Bank, 261 U.S. 171, 43 S.Ct. 311, 67 L.Ed. 594; Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S.Ct. 250, 69 L. Ed. 634; James Dickinson Farm Mtg. Co. v. Harry, 273 U.S. 119, 47 S.Ct. 308, 71 L. Ed. 569; Eastman Kodak Co. v. Southern Photo Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684; Cancelmo v. Seaboard Air Line Ry., 56 App.D.C. 225, 12 F.2d 166; Davega, Inc., v. Lincoln Furniture Mfg. Co., 2 Cir., 29 F.2d 164; Klabzuba v. Southern Pac. Co., D.C., 33 F.2d 359, Hutchinson v. Chase & Gilbert, 2 Cir., 45 F.2d 139, Maxfield v. Canadian Pac. R. Co., 8 Cir., 70 F. 2d 982, Graustein v. Rutland R. Co., D.C., 256 P. 409. Each of these cases presents a different state of facts upon which the question of the meaning of "doing business" was considered. There can be no all-comprehensive rule for determination. Each case depends upon its particular facts. The declarations in certain of the above-cited cases are these: "A foreign corporation is amenable to process * * * only if it is doing business in the state in such a manner or in such a state as to warrant its presence there * * *." "A corporation is engaged in transacting business if, in fact, in the ordinary and usual sense it transacts business therein of any substantial character." It differs from Fisher v. Canadian Pacific Railway Co., D.C., 1 F.Supp. 235. There it appeared that [page 236] "Passenger business was solicited, tickets sold, receipts returned in the usual way to the head office, and cars for transportation of passengers provided each day at a railroad station in Buffalo. * * * Its employees [freight] solicited business for the road, gave out information as to routes and rates, took orders for handling and provided cars for the shipment of freight to various points out of Buffalo." In the instant case defendant sold passenger tickets over connecting lines and its own. Each bears the imprint "Issued by Canadian Pacific Railway." Tickets for *tours* to various points of Canada were issued by the defendant at Buffalo. In other words, it had a regular passenger office for the sale of passenger tickets.

Plaintiff terms the various railroad agreements aforesaid "joint adventures." It is sometimes difficult to distinguish between a joint adventure and a partnership. More usually "joint adventure" is applied to an agreement related to a single transaction. These agreements more nearly resemble a partnership. The effect would be the same here whichever way it is construed. These agreements were all made since the decision in the Fisher Case. They reflect a purpose in each to avoid jurisdiction beyond the extent of its lines of railway. However it may be in other respects, the defendant has not accomplished this purpose as regards its café-parlor and dining cars. The agreement of August 12, 1936, reads, in part: the defendant "shall provide the crews for said cars consisting of stewards (or waiters in charge) chefs, cooks, and waiters under the supervision of the Superintendent of Dining Service." To the extent that defendant did that in New York, it was "doing business" in the district.

In the sales of tickets and in this dining and lounge car service, coupled with the other activities to which reference has been made, and each of which of itself would be insufficient, defendant was "doing business" in this district and this court has jurisdiction.

The service was made upon the proper person. The return of service by the marshall recites "That no president, vice-president, treasurer, assistant treasurer, secretary, assistant secretary, or any officer performing corresponding functions of said defendant corporation can be found within the State of New York, with due diligence." This is not controverted. Further, it appears from the affidavit of defendant's vice president "that at no time has said corporation had a president, vice-president, treasurer, assistant-treasurer, secretary or assistant-secretary or any officer performing corresponding functions under another name within the State of New York." Under such state of facts, service upon Wass as "managing agent" was sufficient.

In view of the last hereinbefore stated facts, it appears that due diligence was used to effect service as provided by subdivisions 1 and 2 of section 229 of the Civil Practice Act of the State of New York.

While it may be urged with some force that this is a somewhat close case upon the question of whether the defendant company was "doing business" within the district, I reiterate the opinion that the proof of the regular sale of passenger tickets within the district, issued by the defendant, coupled with its other activities in the state denoting transaction of certain types of business, and the employment in service of certain of its employees on the café-parlor and dining room cars, is sufficient to support jurisdiction.